UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

HIEP VAN NGUYEN                                    CIVIL ACTION NO. 25-1560

                                                   SECTION P

VS.

                                                   JUDGE JERRY EDWARDS, JR.

LISA BOWEN, ET AL.                                 MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Petitioner Hiep Van Nguyen,[1] a detainee at Richwood Correctional Center in the custody

of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs

Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]

Respondents oppose the petition.  For reasons that follow, the Court should grant Petitioner's

request for release from custody.

## Background

Petitioner is a citizen of Vietnam.  [doc. # 1, p. 1].  She "resided in Enterprise, Alabama,

for over 20 years.  She has been living in the U.S. since 1989[.]"  *Id.*  "She immigrated to the

United States 36 years ago as a Lawful Permanent Resident as a refugee."  *Id.* at 2.

On September 17, 2015, an immigration judge ordered Petitioner removed from the

United States.  [doc. #s 1-1; 11-1].  The same day, however, DHS granted her a deferral of

---

[1] Petitioner Jing Li's "A-Number" is 028-104-163.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.  Although Petitioner had requested a trial
before Judge Edwards, the Petition was referred to the undersigned, and no hearing is necessary,
given the evidence presented.

removal and released her from detention on an Order of Supervision ("OSUP").  [doc. #s 1, p. 6; 1-2, pp. 2-3].  Petitioner complied with the OSUP.  [doc. # 1, pp. 2-3].  "She reported to ICE as instructed, received multiple Employment Authorization Documents from USCIS, and cooperated with the authorities."  *Id.* at 9.  She "remained at the same verified residence in Alabama[,] consistently cooperated with ICE officers[,] has no new criminal record, has demonstrated rehabilitation, and has maintained steady family and community ties."  *Id.* at 11.

On September 24, 2025, ICE re-arrested Petitioner.  [doc. #s 1, p. 2; 11-1].

Petitioner filed this proceeding on October 17, 2025.  Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), she claims that there is no significant likelihood of her removal in the reasonably foreseeable future.  [doc. # 1, p. 22].  She argues that, in part, she is not likely to be removed based on the following:

> According to 2008 U.S.-Vietnam Repatriation Agreement, officially titled Vietnam (08-322) – Agreement on the Acceptance of the Return of Vietnamese Citizens, this agreement explicitly excluded Vietnamese nationals who arrived in the United States before July 12, 1995 from being subject to deportation. The relevant clause states: "Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995."

[doc. #s 1, p. 2; 1-3].  She states, "Vietnam has refused to issue travel documents for individuals in Petitioner's position for nearly two decades, rendering removal practically and legally impossible under the governing bilateral framework."  *Id.* at 11.  She adds, "Even if she had a travel document, according to this agreement, the U.S. would not be able to remove her to Vietnam."  *Id.*

Petitioner also claims that Respondents violated "the Immigration and Nationality Act and implementing regulations, the Administrative Procedure Act, and the *Accardi* doctrine[.]"  [doc. # 1, p. 3].

2

Respondents argue that Petitioner's *Zadvydas* claim is meritless.  With respect to Petitioner's contention concerning the 2008 U.S.-Vietnam Repatriation Agreement, they contend that a "2020 agreement between the United States and Viet Nam [] specifically allows for the repatriation of Vietnamese refugees who arrived in the United States prior to July 12, 1995, the date on which diplomatic relations were established between the United States and Viet Nam. Thus, there is no legal impediment to Petitioner's return to Viet Nam. [sic]."  [doc. #s 11, p. 7; 11-5].  Respondents also maintained in their November 12, 2025 response, "Her travel document for removal to Viet Nam has been requested, and it is anticipated that DHS will receive a travel document for her removal in the reasonably foreseeable future."  [doc. # 11, p. 16].

Petitioner filed an amended petition on February 5, 2026, stating that ICE has still not obtained a travel document.  [doc. # 27, p. 34].  She also argues that with respect to the 2020 Memorandum of Understanding ("MOU") between the United States and Vietnam, "courts have found that the mere existence of an MOU or a government official's assertion of cooperation is not sufficient to establish a significant likelihood of removal without concrete, individualized evidence of progress in the Petitioner's case."  *Id.* at 34 (emphasis omitted) (citing cases). According to Petitioner, "The government's reliance on the MOU does not override the binding bilateral agreement, and there is no evidence that Vietnam has issued travel documents for individuals in Petitioner's position."  *Id.* at 35.  She argues further:

> Petitioner's case is nearly identical to the petitioner in *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025).  There, the district court highlighted that the 2020 MOU does not mandate that Vietnam accept all eligible pre-1995 Vietnamese refugees with orders of removal; it "constitutes an understanding only between the Participants and does not give rise to any rights or obligations under domestic or international law;" it "does not create or confer any rights, privileges, or benefits on any individual." 788 F. Supp. 3d at 151, citing the MOU. The memorandum does not mandate that Vietnam will accept Petitioner"; instead, "Vietnam has total discretion whether to issue a travel document to any

individual." *Hoac v. Becerra*, No. 2:25-CV-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) citing *Nguyen v. Hyde*, 788 F. Supp. 3d at 151.

. . . .

The government's case was further undermined by its inability to specify what stage of processing the petitioner's travel documents had reached or the anticipated wait time for receipt.

*Id.* at 35.

Respondents responded to Petitioner's amended petition on March 28, 2026. [doc. # 35]. As to her *Zadvydas* claim, they state, "although Petitioner argues that the number of similarly situated Vietnamese aliens are not often removed under the MOU, Petitioner does not dispute that removals have occurred under the 2020 MOU." *Id.* at 6-7. They also reiterate from their initial response: "Her travel document for removal to Vietnam has been requested . . . ." *Id.* at 7.

Petitioner replied on April 8, 2026. [doc. # 37]. She argues that Respondents "assert, without evidence, that [her] 'travel document for removal to Vietnam has been requested, and it is anticipated that DHS will receive a travel document for her removal in the reasonably foreseeable future.' [] Argument of counsel is not evidence." *Id.* at 5. "Respondents made this same assertion without evidence over four months ago . . . and still have not marshalled evidence to support it, even though [Petitioner] called out this lack of evidence in her motion for reconsideration[.]" *Id.*

### **Jurisdiction**

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687. The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges

to final orders of removal.  8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007).  And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole,"  8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues,"  *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, she has been detained 202 days (or 6 months, 21 days) following her final order of removal.

Petitioner meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.  Her order of removal became final in October 2015.  And she has been detained since September 24, 2025.  Yet, for approximately 202 days (6 months, 21 days), the Government has been unable to obtain a travel document for her despite allegedly requesting a travel document before November 12, 2025— when Respondents filed an initial response to this petition—and despite Petitioner's full cooperation.  Moreover, the Government has been unable to effectuate her removal for over ten years following her final order of removal.

In addition, under the 2008 U.S.-Vietnam Repatriation Agreement, "Vietnamese citizens are not subject to return to Vietnam . . . if they arrived in the United States before July 12, 1995[.]" [doc. # 1-2, p. 5].  Petitioner arrived in the United States before July 12, 1995; consequently, she is not "subject to return to Vietnam."  As Petitioner argues above, "Even if she had a travel document, according to this agreement, the U.S. would not be able to remove her to Vietnam."  To be clear, the undersigned is not opining that Petitioner has definitively established

7

that the 2020 Repatriation Agreement completely prohibits her removal, rather the undersigned finds only at this stage that the 2020 Agreement aids Petitioner in meeting her initial burden.

Respondents do not rebut Petitioner's showing.  They do not provide any evidence indicating that travel documents are forthcoming, that ICE has made meaningful progress in effectuating Petitioner's removal, that Petitioner has not fully cooperated with ICE, or that the 2008 Repatriation Agreement is, for example, suspended or no longer operative.[4]

Respondents stated in their November 12, 2025, response that Petitioner's "travel document for removal to Vietnam has been requested . . . ."  [doc. # 11, p. 16].  They did not provide any evidence, however.  Then, in their March 28, 2026 memorandum, they repeat, "Her travel document for removal to Vietnam has been requested . . . ."  [doc. # 35].  Again, they do not provide any evidence.  Nor do they state when they requested a travel document.  The undersigned concurs with Petitioner's reasoning that "[a]rgument of counsel is not evidence" and that "Respondents made this same assertion without evidence over four months ago . . . and still have not marshalled evidence to support it, even though [Petitioner] called out this lack of evidence in her motion for reconsideration[.]"

Further, even assuming Respondents did request a travel document for Petitioner, the request (at best for Respondents) remains pending.  Respondents do not indicate that they received any response to the request.  That they submitted a request for a travel document which to date remains unanswered does not establish that removal is significantly likely to occur in the reasonably foreseeable future.  Travel document requests can, for instance, be denied, ignored, or processed in the distant future (as opposed to the 'reasonably foreseeable future').  Further, that

---

[4] Below, the undersigned addresses Respondents' suggestion that the 2008 Repatriation Agreement is superseded.

Respondents have not obtained a travel document following the request submitted at least over five months ago suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  There is no evidence that Vietnamese officials have even received, reviewed, or responded to the travel document request.  Respondents essentially present a request for a travel document followed by no indication of progress in over five months and no indication that progress will occur.  The longer a request for travel documents remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas*, 533 U.S. at 701.

Courts in this District have held that the government's burden to furnish evidence demonstrating that removal is significantly likely in the reasonably foreseeable future is not met by a pending request for travel documents alone.  *See, e.g., Johnson v. Young*, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013), *report and recommendation adopted,* 2013 WL 1571272 (W.D. La. Apr. 12, 2013) (finding the argument that the Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden); *Fermine v. Dir. of Immigr. & Customs Enf't*, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007); (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document, and Trinidad had not yet refused the request).

Respondents provide no evidence—or reasons to conclude—that  a travel document is forthcoming.[5]  They do not, for example, provide any evidence that they have made progress in

---

[5] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner

obtaining travel documents, that they have been communicating with Vietnam about Petitioner's deportation, that Vietnam has recently accepted other deportees *similarly situated* to Petitioner, or that Vietnam is willing to accept Petitioner.[6]

In addition, while not dispositive, the undersigned finds it persuasive that Respondents had over ten years to try and remove Petitioner after her first removal order became final, yet they waited until September 24, 2025, to detain her and finally *attempt* (futilely, to date) to remove her. Respondents suggest that the Government was not inclined to remove Petitioner until 2025 when DHS's "priorities" changed and rendered Petitioner a priority removal. But the undersigned is unpersuaded because an immigration judge *ordered* in 2015 that Petitioner be removed from this country. The immigration judge did not merely suggest that Petitioner be removed when DHS changed its mind. Further, DHS made no attempt to remove Petitioner to a third country; rather, it allowed Petitioner to continue establishing her life in the United States for ten additional years before re-arresting her.

---

habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[6] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

Plainly, DHS has been unable to remove Petitioner—a lawful permanent resident[7]—since 2015.  The Government previously released her under an OSUP, which generally occurs when the government determines that removal is not likely.  *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.13(g)(1) (if the Service concludes "there is no significant likelihood that the alien will be removed in the reasonably foreseeable future," they shall then make arrangements for release).  Even assuming DHS was only unwilling (as opposed to unable) to remove Petitioner before and that it is now willing, as explained above there is still not a significant likelihood of removing Petitioner in the reasonably foreseeable future.

Respondents suggest the 2020 MOU, which "was not in place when Petitioner was initially ordered removed[,]" permits the United States to remove Petitioner to Vietnam.  [doc. #s 11, p. 20; 11-5].  The parties do not adequately brief the applicable international law concerning whether the MOU is operable in light of the 2008 Repatriation Agreement.  Even assuming it is, the MOU only establishes that it is possible to remove "Vietnamese citizens who have been ordered removed by U.S. competent authority and who arrived in the United before July 12, 1995 . . . ."  [doc. # 11-5].  And Vietnam "intends to take" various "factors" into consideration "prior to accepting an individual ordered removed by the United States[.]"  *Id.* at 3.  A possibility of removal, however, does constitute a "significant likelihood" of *Petitioner's* removal to Vietnam in the reasonably foreseeable future.[8]  In fact, the MOU states, "Within thirty (30)

---

[7] Respondents concede that "Petitioner was admitted as" a lawful permanent resident.  [doc. # 11, p. 20].

[8] *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 726 (W.D. Wash. 2025) ("[T]he MOU has repeatedly been deemed insufficient to show a significant likelihood of removable in the reasonably foreseeable future.") (citing *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (noting that establishing a process of review and issuance of travel documents for Vietnamese citizens ordered removed, alone, was not enough because under the MOU, Vietnam has total discretion to decide whether to issue a travel document); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025).

calendar days from the receiving date of a request for a travel document from DHS, [Vietnam] intends to issue the travel document when the individual meets the eligibility criteria . . . ." *Id.* at 4. Here, Respondents allegedly requested a travel document well over thirty calendar days ago, yet they lack a travel document.

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[9]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Hiep Van Nguyen's petition for habeas corpus be **GRANTED**: Respondents, including the Warden of Richwood

---

[9] The undersigned finds no need to address any claim or request for relief not addressed herein.

Correctional Center, shall (A) immediately release Petitioner from custody without bond under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[10] Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 14th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

---

[10] In other words, it is the intent of the Court that Petitioner should not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

13